The first case this morning is 524-0247 Romeo v. Bank of Herrin. Arguing for the appellant is Paula Newcomb. Arguing for the appellee is Daniel Hassenstab. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, your honors. I apologize for the environment I am in. I am working from home and I'm not able to put the proper screen on. I received my link just a few minutes ago and I've been struggling with trying to find a zoom link this morning. I represent Bill Romeo, William J. Romeo, who is the son of William F. Romeo. As you're probably aware, this is an appeal from a case on the L docket where William J. Romeo, I refer to him as the son at times, sought to recover personal property from the Bank of Herrin that had been lost or damaged while Bank of Herrin was executor of the estate. In 21L17, there's a long and tortured history here with these cases, but the Romeos lived together side by side in two homes. The son acquired some land from his father, built a house. They were neighbors for all of the son's life really when he didn't grow up in his father's home. At any rate, when Mr. Romeo Sr. was 80, in his 80s, he became ill and he made another will to a woman named Joan Burton. Mr. Romeo passed. There was a will contest between the son and Joan Burton and the Bank of Herrin was appointed the executor in 22013P15, the estate case. So that was in 2013. That case meandered on until, it's still now, it's still open, but it's getting very close. About 2015, two years into this, Mr. Romeo Jr. was represented by Richard Cougar from Metropolis, probate attorney for decades. He filed a petition. Let me stop you for one second, Ms. Newcomb. In your brief, I mean, you started your presentation today with this is a long and tortured case. Your brief consists of eight paragraphs in the statement of facts, page and a half basically. Is that doing due diligence to the facts in this case? Well, I'm appealing from 21017, but I did note that the appellee has filed portions of that case as part of their record. So I was trying to explain that. The case itself, really the issue is very simple for what we are seeking to have you review from 21017. The issue that the case was granted summary judgment and dismissed with prejudice based on statute of limitations. So the only thing I really have to argue, and there are two, there are two issues, but the only thing I really have to argue today is whether or not it is barred by statute of limitations. And in 2013, P115, in 2015, there was a recovery citation filed by the William J. Romeo by Mr. Cougar. And that's what I was getting to with Mr. Cougar. But at any rate, that was never heard. And Judge Goffinette acknowledges that. I think the appellee acknowledges that in their writings. So that citation, which contained schedules, list of property, was never brought to hearing. Now, Mr. Romeo, he's had four lawyers. I was the fourth, third, and the fifth, four or five lawyers. It's been a long case. There have been a lot of independent things litigated in that probate case. But he became the executor in 18, in 2020. And I did this, and it was probably, it was a wrongful way to file it. But we filed, in August 2420, a petition for recovery of his own personal property. And then a month or so later, we filed a petition against the bank for recovery lost state property. Both of those were in 2013 P115. Judge Goffinette opined that it should be filed in an L case. It should be transferred to an L case. Then, frankly, I was suspended from October of 20 to July of 21. And after I filed those documents, then I was no longer the attorney. And the new attorney, you know, we talked about that had to be moved to the L docket. At some point in that history, that docket, Judge Green was briefly on it, and he denied a motion to move it to the L docket after Judge Goffinette said to move it. So, it eventually got moved there. And Daryl Dunn was the attorney at the time, and he filed an amended complaint called trespassed chattels, but he still attached the same schedules and property lists that were in the 2015 recovery citation, in the 2020 lawsuit, and then again in the 21 lawsuits, which were, there were two more amended. So, my argument is that there's been a discussion in the record that it was improper to file into the probate case, which that's true, and that's why it was transferred to the L docket. But when Mr. Romeo filed the petition for recovery citation, he absolutely properly filed it in the right place. He was a third party, he was not the executor, and he filed it under the probate statute allows such as that. So, our argument is that it was timely filed in 15 as a recovery citation, and all these subsequent complaints for recovery of his own personal property relate back to the regional filing, which is timely. The other issue that Judge Goffinette discussed, well, it wasn't really in the ruling, but it is in the appellee's argument, that in the depositions, which occurred all in the probate case, or primarily, although it was sort of a hybrid deposition, that Mr. Romeo could not prove that he had lost this property, or who took it, or that the bank had damaged it, but this is a vast amount of property. And when Mr. Romeo took over in 2020, he was able to see what was damaged, and what was there, and what was not there. And before that, there were other... Hold on a minute, hold on a minute, counsel. Wasn't there a finding that your client observed the residence and the outbuildings in October of 2014? Yes, there was videos taken. So, isn't that the time? Your own brief said that's... Did you concede that's when the cause of action accrued? Well, I think at that time, he knew most of the property was there and intact, but some things... But that's what generated the 2015 recovery citation. He didn't sit on his rights. He filed that recovery citation after that 14 inspection. And was that noticed up for hearing? It was noticed three or four times. In one of the transcripts that I had prepared, Judge Goffin and I are discussing the fact that it was never heard. And I went back through the docket, and it would be set for hearing, and then the court would cancel it, or someone would file a motion to continue. Three or four times it was set, but never got heard. Part of the reason for that is there was... In the probate case, there was a petition to sell some real estate. And the person that wanted to buy it was the person ultimately built the casino in Carterville. And Mr. Romeo's son opposed that, and there was a whole year of litigation about that. So I don't know if that... I wasn't the attorney at the time. So why that case got... The citation got kept getting kicked and kicked, I don't know, but it did. And it just never got heard. And I had to go back through and study that, because I wasn't the attorney at the time, and make sure. But we are sure that it wasn't ever heard and decided. And the appellee does not claim or provide out an order, or provide a docket entry or anything that they believe that it was hard and decided. So, but I think it's pretty clear that this relates back to his efforts in 15 to get his property. One thing about this, the extent of this property, and why there are issues of material fact, is that Mr. Romeo's son kept a spreadsheet of all the property. And there was a barn he built, there should be reference to this, but he built a barn with his endeavors on his father's property. And then they both filled it up with tools and tractors and things like that. But he primarily kept all these schedules because his wife was worked in an accountant's office, and they needed the schedules for tax depreciation. They also jointly took eight acres and made a 3,000 acre Christmas tree farm. Now, this was to the father. So, unfortunately, while this probate case went on, he lived right there and had to watch that Christmas tree farm just grow up into brush. And after he became executor, he had to bulldoze it down. And it was completely destroyed by the lack of care that the bank showed to it. So, there are many, many issues of fact about what he knew and what he knew when he became executor that was different from the inspection that was done in 2014 for damages to his own personal property. And the amount of property that he owned, it was a great amount. It was a huge amount. And he tried for years to get the bank to release to him his property, and the bank would not do so. And that's what brought this case. But I don't think that there's sufficient information in the record to show that there's no possible set of facts that he could prove damage to his property. As the bank claims, the bank basically claimed that in his deposition, other people lived in the house. And that is true. The bank did not remove the tenants for about seven months or six months or so. So, it was an unfortunate time and a lot of things disappeared during that time, I'm sure. But still, the rest of the property was there and then just became damaged and in disarray for years and years after is the gist of his claim. Did the 2015 petition for citation ask for money damages from the bank? I will find that. My memory is that it did not. It was for only personal property. Well, then how does it relate back then? How does the L case relate back to the citation case? The L case, you want money, and the citation case, you don't. Well, the request for money is because at the time of 2014, the property was still there and could have been recovered in itself. But as years went by, and it was damaged, rusted, destroyed, lost, there is no actual... Well, some there's property to get. There was property, some property to get. But it metamorphosed into damaged property from property. So that's why... But that would not bar the relation back, doctor, because it is the bank's own cause, the bank's own actions that caused this. It would have been very simple just to give him his property, but they would not do that. How do you resolve the court's finding that... I think the court once said, I cannot overlook that Mr. Romeo last saw any of the items that are missing in March of 2013, and his father did not die until October 2013. So the father could have converted the property, it could have been taken before he died, or it could have been stolen, or the father could have sold it, or any number of things could have happened. How do you resolve that? Well, we do think that there were some things taken by the tenants, which was Joan Burton, the wheel contestant, and her two daughters, her daughter and her daughter's friend. We do believe that some of those things were removed unlawfully by them. However, in 14, there was an extensive video. The bank was present, Mr. Romeo was present, and there was two barn, large barn, small barn, house, basement. There were video of all that property. And that was after Ms. Burton was out of the property. Oh, and there was a store building. Mr. Romeo Sr. had created the Blairsville Water District. He got water to Blairsville when he was younger, and he was the president of the water board. He had an art framing business, and he ran that business and had the water board, a water department, right there in that building for many years. And the board met once a month and so forth. Well, this building also had property in it. So, there were about four buildings that they took videos of. So, even after that time period... So, you're saying the property was there when the video was taken in 2014? A great deal of property was still there. All right, counsel. I see your time has expired. Justice Barberis, any further questions? Not at this point. Justice Farn? No, thank you. All right, appellant, you'll be given time for rebuttal. Applee, you may proceed. Court, Dan Hasenstab on behalf of Bank of Heron. Can the justices hear me okay? Yes. Okay, thank you. I'd like to take the arguments out of order from our briefing, because I think the court's job is pretty easy with respect to counts one and three of the amended complaint. That would be the conversion counts. This is because the bank moved for summary judgment on two independent bases, one being the statute of limitations, the other being the lack of admissible evidence showing when these items were lost or stolen, specifically whether they were lost or stolen during the time that the bank was in possession of the premises. The plaintiff's brief addresses the statute of limitations argument. It does not address the second argument. We argue that that argument has been forfeited under Rule 341 H7. In the trial court, the bank, as I think it's Justice Bond who pointed out, we submitted the transcript. Well, actually, the plaintiff himself submitted the transcript of this for Plevin proceeding as part of his own pleading, which showed that Judge Goffin had noted that there was no evidence to show when the items that the plaintiff was claiming compensation for were stolen. He had last seen them in March 2013. His father died in September 2013. The bank did not take control of the premises until February 2014. There was simply no evidence to show when these items, if they were taken before February 14, when the bank took over or after. When that evidence was presented to the trial court as part of the summary judgment proceeding, the plaintiff's only argument in response was that, well, I have some witnesses who are going to say that they saw stuff taken from the property before that. No affidavits were submitted to support that. As this court has noted, the summary judgment proceeding is the shut up part of the proceeding. Either show your evidence or you lose. If you can't show evidence that there's a genuine issue of material fact. It was pointed out in our reply that there was a statement that was submitted by the plaintiff, was not sworn to. It was just a summary of an affidavit or evidence that would be admissible at trial. Essentially, then, what we're arguing, Your Honor, and I think the record is clear on this, is that the plaintiff has flat out forfeited any argument that he has any evidence that would create a genuine issue of material fact as to the bank's liability for conversion on counts one and three. I think the case stops there. I don't think we get to the statute of limitations argument, at least with respect to those counts. If the court has no other questions on that, I'll move on to the statute of limitations argument. First of all, I still am unclear as to whether the plaintiff is taking a position that the trial court's conclusion that the cause of action accrued in October 2014 was incorrect. I've heard some argument today that they may be opposing that. I didn't see anything in the brief that suggested a different date when the cause of action accrued. Again, I think that argument has been forfeited. I think that we can assume for purposes of this litigation, purposes of this appeal, that the cause of action for any damage or loss to the property for which the plaintiff was claiming compensation had accrued in October of 2014, when the plaintiff had the opportunity to visit the property and to make a list of the items that he believed were missing. This was clearly established in his deposition testimony. My partner had questioned him about the list that he's submitted in his pleading in the Yale case. He said, these are the items you're claiming compensation for, yes. These items were missing upon your inspection in October of 2014, yes. The guns that you're claiming, they were missing in 2014 upon your inspection, yes. The damage that you're claiming in account two, the trespass chattels, that was damage you observed during your inspection in 2014, yes. Granted, I'm simplifying the testimony, but that was the gist of it. I think with respect to statute of limitations issue, it all comes down to what my opponent had started her argument with, is the relation back. I guess the legal question for the court then is whether a petition under 16-2 of the probate code, I'm sorry, let me rephrase that, whether an action for damages, a tort action for damages can relate back to a prior petition under 16-2 of the probate code. Our brief sets out several arguments as to why that just isn't the case. I'll go through those briefly for your honors. First of all, first and foremost, relation back is a statutory form of relief. It's based on 2-616 paragraph B of the code of civil procedure. That section speaks to amendments of pleadings. It's not speaking to new actions. They relate back to old actions, new proceedings that relate back to old proceedings. It specifically speaks to amendments of pleadings. No matter how you can construe it, this action of damages that was filed, first of all, as my opponent has conceded wrongfully filed in the probate court in 2020, and then corrected, we filed as an L case in 2021. How that could be an amendment to a citation proceeding under 16-2 of the probate code, honestly, it escapes me how that could even be considered an amendment. I understand it's about the same subject matter, but it's not an amended pleading. As I pointed out in my brief, if it was an amended pleading, if this wrongfully filed action of the probate code was an amendment to the citation proceeding, it should have been stricken out because it wasn't filed with leave of court, which amendments must be. It doesn't even purport to be an amendment to the citation proceeding. It appears that the citation was simply forgotten about after it was filed in 2015. Counsel said it was set for hearing a couple of times. I can't really speak to that. I don't know. Our firm wasn't involved at that point. The probate record is over 3,000 pages long. I don't know. I'm not intimately familiar with everything that happened in that case. But even if it is, the tort case is not a continuation of that citation proceeding. As the Supreme Court noted, the citation proceeding under 16-2, it's a bill for discovery. It's not an action for damages. I think the best analogy I can come up with is a subpoena. If you serve a subpoena on somebody in 2015 and you just let it sit there and don't take any action on it, and then you sue that person five, six, seven, eight years later, and they say, well, you've blown the statute. You say, no, no, no, it relates back to that subpoena I served on you six, seven years ago. It just doesn't make any sense. There's no room in section 616 to allow for this to be a relation back under the statute. Another point I'd like to address briefly, this petition, the 16-2 petition was moved when the bank was removed as the executor of the estate. The petition was directed to the bank, asking that the bank turn over assets that the plaintiff believed belonged to him. Now, the bank is removed as the executor, it obviously no longer has possession of the items that the plaintiff wants to turn over. For the plaintiff's position to prevail, this court would have to not only find that a new action, a new tort action relates back to a citation proceeding filed five years earlier in a probate matter, but that it relates back to a citation proceeding that it was rendered moot and essentially defunct because the executor or the defendant in the L case, in the new case, was no longer the executor or was removed as the executor of the estate in the interim. Along those same lines, Your Honor, if this notion is accepted, that a tort claim for damages can relate back to a 16-2 petition on the probate code that was filed and never ruled upon, then there's no limitation on when such a suit could be filed. Under the plaintiff's argument or the plaintiff's position, necessarily, he could file a petition tomorrow. He could have filed it 10 years from now. Essentially, their position is once you file a 16-2 petition, which again, not an action for damages, just an action for discovery. Once you file that, you've essentially told the statute limitations for any recovery on that property indefinitely. Obviously, I would imagine the court does not want to write an order or an opinion that would allow for this type of any questions. I'll rest on our briefs. And also, you say that the case can be disposed of on the conversion issue, right, without reaching the statute? That's correct, Your Honor. Well, does the opposite hold true? Can the case be disposed of on the statute of limitations issue without reaching the conversion? Absolutely, Your Honor. Okay. Thank you. Justice Vaughn, any further questions? On the summary judgment issue, both parties agreed that the standard review is de novo, and the standard to be applied or the way it was to look at it is strictly construe the evidence against the move and liberally in favor of the opponent. But how is it clear that that's what the trial court did here, especially when they relied on an order that did not involve the bank? The bank was not a party. So how does res judicata or collateral estoppel apply if the bank was not a party in that earlier order? Are you talking about the raplevin proceeding, Your Honor?  I'd like to kind of reframe the argument there. The trial court admittedly did not even reach that issue, did not even reach the issue of whether there was sufficient evidence to survive summary judgment. The trial court found that the statute of limitation issue was dispositive, didn't even reach the second argument. What our argument is, Your Honor, is that as the appellate you review the trial court's judgment, not its reasoning. So if there was evidence to support the alternative argument that we raised in the trial court, which we say there was, and we also say that the plaintiff has essentially forfeited that argument, that you can affirm on that grounds independent of the statute of limitations. So my response, Your Honor, is that the trial court didn't even reach that argument. The argument we raised, I don't think it was adequately responded to, but since the trial court found the statute of limitations issue was dispositive, it never even reached that issue. But that doesn't bind this court. Was the same property at issue in the February 2015 order and the July 2015 petition? The February 15, the raplevin action, I don't, I believe it was the same property. I can't sit here and tell you definitively that every single item that raised in the republican action was raised in the citation proceeding or in the tort action. I can't say that to you, but I know it was the same. The same issue is he was looking for recovery of these items that were left at his father's residence after his father died, which he claimed that belonged to him. He thought the woman who was living there had taken them, her friends had taken them. He couldn't prove that on a republican action. And our argument, he has not submitted any evidence to suggest that the bank was responsible for those either. But again, your honor, that is an alternative argument. I think, you know, that's a limitation issue completely independent of that. And I think that we prevail on that as well. Thank you. Justice Barberis, any further questions? No, thank you. Appellate, you may uh rebuttal. Thank you. In the appendix at record C-608, that is the petition for recovery citation that was filed July 10th of 2015. And it asks for the prayer for relief. That was a question you gave me before. The court determined who has the title and right of ownership to the William J. Romeo property. The court direct the executor bank of Heron to deliver to William J. Romeo his property, enter an order of judgment as the case requires, and for other relief as deemed just and proper. And they have attached Exhibit A and alleged that alleged that this property on Exhibit A list did not belong to the estate. And that is the same as schedules that Mr. Romeo put in his successive complaints, which were there were three of them. So it is he's in 15 he's asking for the same property that he asked for ultimately in the L case. I want to point out everyone agrees now that when the L case had a case transferred over they transferred the wrong case. They transferred the probate case which was William J. Romeo executor seeking recovery for a property against the bank as former executor. They sent the wrong case. So I have made part of the record. I got a certified copy of the correct case and added to the record. So that case wasn't in there when judge would have looked at summary judgment and the verified it was a verified pleading. He didn't have the right case before him and it is was confusing I'm sure but I wasn't the attorney when that transfer happened so I didn't find that out really until this record looked through the read this record. But it is it's just not accurate that the that the case is moot because now the bank's not the executor therefore the recovery citation this action doesn't relate back to them because they were the executor. They're the former executor and it was perfectly proper to bring the recovery citation when they were the executor. It's the right format to sue them as former executor now it just needed to be in its own L docket which eventually it got there. The Replevin case really has very little bearing on this argument because the Replevin case was filed by Mr. Romeo sort of a just try to stop the hemorrhage. You have people living in his father's house that were hauling off property and but the but that case is doesn't involve the bank of here and it's just not the same parties. It has very little bearing other than the bank can argue well we didn't lose it or discard it or damage property was taken off by Joan Burton but that's really a limited amount of the whole big picture here of what property was damaged. I believe I mean you know when Mr. Romeo became the the executor in 2018 the prior will was and in the prior will he is the sole beneficiary so his rights his cause of action changed. He had not only what he had before but he had what he would be entitled to as the sole beneficiary so that changed and in the summary judgment responses I don't think there's been any waiver of we attached portions of the deposition that were sworn to we have verified pleadings we have we've filed affidavits of the of different parties and so I don't even think Judge Goffin it really got to the issue about whether there was issues of material fact. I'm sure he would not have found that there were no issues of material fact as to what property got lost damage or taken by Joan Burton or the bank's neglect or just from you know decay. Judge Goffin did leave three or four counts alive against the bank and as you have that record here we went to trial on those and but that was estate property not Romeo's not the son's property. That's really all I have if you have any questions for me. Anything further? Just a little technicality on your page 11 of your brief you have proof of service to the clerk of the appellate court in fifth district you list John Costa as the clerk. Oh that would be there yeah I just you might want to update that all right for future for future submissions. Okay Justice Vaughn. All right thank you counsel for your arguments we will take this matter under advisement issue a ruling in due course.